UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ARTURO AMARAN,

     Applicant,

v.                              CASE NO. 8:15-cv-198-T-23JSS

SECRETARY, Department of Corrections,

     Respondent.

_____/

## O R D E R

Amaran applies under 28 U.S.C. § 2254 for the writ of habeas corpus (Doc. 1) and challenges his conviction for manslaughter committed while driving under the influence, for which conviction Amaran is imprisoned for thirty years. Numerous exhibits ("Respondent's Exhibit __") support the response. (Doc. 5) The respondent admits the application's timeliness. (Response at 4, Doc. 5)

## FACTS[1]

Shortly after midnight on the morning of July 4, 2004, Edguardo Rivera was driving his Honda east on Interstate 4 approaching Tampa and traveling at about 65 to 70 miles per hour. An Audi sped past him and slowed down. The Audi passed him a second time and again slowed down. In the interchange with Interstate 275, the Audi, now in the right lane, passed again, lost control, and ran into the guardrail

---

[1] This summary of the facts derives from Amaran's brief on direct appeal. (Respondent's Exhibit 4)

on the right side of the road. The Audi bounced off the guardrail and traversed the middle and left lanes, which were occupied by Rivera and a motorcyclist, later identified as Travis Peer. As the Audi crossed his lane Rivera hit the left-rear of the Audi. Both cars eventually stopped against the concrete barrier on the left side of the road; Peer was fatally trapped under Rivera's Honda. At the moment of the accident, Peer was riding with several other motorcyclists, who returned to the scene, lifted the Honda, and released Peer. One of the motorcyclists testified that he was traveling about 75 or 80 miles per hour when the Audi passed him, lost control, and ran into the guardrail.

Amaran was the driver of the Audi. When he exited his car, Amaran smelled of alcohol and was unsteady on his feet, "swaying from left to right." Amaran attempted to leave the scene by going down an embankment, but he was returned by a couple of the motorcyclists, who "guarded" him to prevent his fleeing.

A couple of hours later blood was drawn from Amaran at the hospital. Testing determined that the blood-alcohol level was .17, double the legal limit and, according to the forensic toxicologist, a level at which a person loses concentration, judgment, vision, and coordination. An officer testified that at the hospital Amaran's speech was slurred, his eyes were "glassy" and "bloodshot," and his eyes were "jumpy" instead of moving in a controlled, steady motion.

Amaran maintained that the accident was caused by a motorcyclist who "cut him off" and forced him to hit the guardrail. One of the motorcyclists testified that "Charlie," another member of the riding group, was in front of the Audi. Amaran

contends that "Charlie" caused the accident. "Charlie" was neither identified further nor located. Additionally, Amaran claimed that he attempted to leave the scene of the accident because he feared the motorcyclists.

Trooper Johnson — who was specially called to the scene by the first officers to arrive; who has specialized training in traffic homicide investigation, pedestrian and bicycle crash investigation, and motorcycle crash investigation; and who has investigated more than two hundred accidents and more than twenty-five fatal accidents — qualified as an expert witness in accident reconstruction and testified that Amaran caused the accident that resulted in the death of Travis Peer. A jury convicted Amaran of manslaughter committed while driving under the influence, which was his third conviction for driving under the influence. Amaran was sentenced to imprisonment for thirty years. Under Section 2254 Amaran challenges the validity of this conviction.

## STANDARD OF REVIEW

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Wilcox v. Florida Dep't of Corr.*, 158 F.3d 1209, 1210 (11th Cir. 1998), *cert. denied*, 531 U.S. 840 (2000). Section 2254(d), which creates a highly deferential standard for federal court review of a state court adjudication, states in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

In *Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), the Supreme Court interpreted this deferential standard:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court. Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied — the state-court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal Law, as determined by the Supreme Court of the United States" or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States." Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

"The focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, . . . an unreasonable application is different from an incorrect one." *Bell v. Cone*, 535 U.S. 685, 693 (2002). "As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in

justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 131 S. Ct. 770, 786–87 (2011). *See White v. Woodall*, 134 S. Ct. 1697, 1706–07 (2014) ("The critical point is that relief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question . . . .") (citing *Richter*); *Woods v. Donald*, 135 S. Ct. 1372, 1376 (2015) ("And an 'unreasonable application of' those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice.") (citing *Woodall*, 134 S. Ct. at 1702). *Accord Brown v. Head*, 272 F.3d 1308, 1313 (11th Cir. 2001) ("It is the objective reasonableness, not the correctness *per se*, of the state court decision that we are to decide."). The phrase "clearly established Federal law" encompasses only the holdings of the United States Supreme Court "as of the time of the relevant state-court decision." *Williams v. Taylor*, 529 U.S. at 412.

The purpose of federal review is not to re-try the state case. "The [AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. at 694. A federal court must afford due deference to a state court's decision. "AEDPA prevents defendants — and federal courts — from using federal habeas corpus review as a vehicle to second-guess the reasonable decisions of state courts." *Renico v. Lett*, 559 U.S. 766,

779 (2010). *See also Cullen v. Pinholster*, 131 S. Ct. 1388, 1398 (2011) ("This is a 'difficult to meet,' . . . and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt' . . . .") (citations omitted).

When the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons as stated in the opinion and defers to those reasons if they are reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[A] federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable."). When the relevant state-court decision is not accompanied with reasons for the decision, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* "The State may contest "the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision . . . . *Id.*

In a *per curiam* decision without a written opinion the state appellate court on direct appeal affirmed Amaran's convictions and sentence. (Respondent's Exhibit 6) Similarly, in another *per curiam* decision without a written opinion the state appellate court affirmed the denial of Amaran's subsequent Rule 3.850 motion to vacate. (Respondent's Exhibit 16) The state appellate court's *per curiam* affirmances warrant deference under Section 2254(d)(1) because "the summary nature of a state court's

decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir.), *reh'g and reh'g en banc denied*, 278 F.3d 1245 (2002), *cert. denied sub nom Wright v. Crosby*, 538 U.S. 906 (2003). *See also Richter*, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary."), and *Bishop v. Warden*, 726 F. 3d 1243, 1255–56 (11th Cir. 2013) (describing the difference between an "opinion" or "analysis" and a "decision" or "ruling" and explaining that deference is accorded the state court's "decision" or "ruling" even if there is no "opinion" or "analysis").

As *Pinholster*, 131 S. Ct. at 1398, explains, review of the state court decision is limited to the record that was before the state court:

> We now hold that review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. Section 2254(d)(1) refers, in the past tense, to a state-court adjudication that "resulted in" a decision that was contrary to, or "involved" an unreasonable application of, established law. This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time, i.e., the record before the state court.

Amaran bears the burden of overcoming by clear and convincing evidence a state court factual determination. "[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

28 U.S.C. § 2254(e)(1). This presumption of correctness applies to a finding of fact but not to a mixed determination of law and fact. *Parker v. Head*, 244 F.3d 831, 836 (11th Cir.), *cert. denied*, 534 U.S. 1046 (2001).

## TRIAL COURT ERROR

### Ground One:

Amaran alleges that the trial court abused its discretion by both qualifying Trooper Johnson as an expert on accident reconstruction and allowing him to testify as an expert witness. Amaran's trial was the officer's first time to testify as an expert witness. In his brief on direct appeal Amaran complained that the trial court allowed the officer "to testify as an expert that Mr. Amaran was responsible for the accident, and caused the death of Mr. Peer . . . ." (Respondent's Exhibit 4 at 28) Whether a witness qualifies as an expert rests within the discretion of the trial court, as *Ramos v. Sec'y, Dep't of Corr.*, 441 F. App'x 689, 693 (11th Cir. 2011),[2] explains:

> The decision to admit expert testimony in Florida is left to the trial court's discretion and reversed only on a finding of clear error. *Terry v. State*, 668 So. 2d 954, 960 (Fla. 1996). The court must make two factual determinations prior to certification of an expert. The court must decide first whether the subject matter is proper for expert testimony and, second, whether the witness is adequately qualified to express an opinion in the matter. *Id.* (citations omitted). Experts may express opinions on matters in which they have expertise when it is in response to facts disclosed at or before trial. *Id.*

---

[2] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

The subject matter that required an expert witness was determination of the cause of the accident (a subject that warrants expert testimony) and the trial court ruled that the officer possessed the qualifications of an accident reconstruction expert after considering both the foundation laid by the prosecution on direct examination and the *voir dire* by the defense. (Respondent's Exhibit 2, vol. III at 338–44) Having qualified the witness as an expert, the trial court committed no error by allowing the witness to testify that Amaran was responsible for the accident that caused the death of Mr. Peer. *See Ramos*, 441 F. App'x at 693 ("[T]he trial court reviewed the medical examiner's record and made a determination that her education, knowledge, skill, experience, and training qualified her as a forensic pathologist capable of expressing opinions on the position of the bodies. This determination is not clearly erroneous.").

The trial court's allowing Trooper Johnson to testify as an expert was an evidentiary determination. For the most part, an evidentiary ruling raises no question of constitutional magnitude, as *McCullough v. Singletary*, 967 F.2d 530, 535–36 (11th Cir. 1992), *cert. denied*, 507 U.S. 975 (1993), explains:

> A federal habeas petition may be entertained only on the ground that a petitioner is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C. § 2254(a). A state's interpretation of its own laws or rules provides no basis for federal habeas corpus relief, since no question of a constitutional nature is involved. *Bronstein v. Wainwright*, 646 F.2d 1048, 1050 (5th Cir. 1981). State courts are the ultimate expositors of their own state's laws, and federal courts entertaining petitions for writs of habeas corpus are bound by the construction placed on a state's criminal statutes

by the courts of the state except in extreme cases. *Mendiola v. Estelle*, 635 F.2d 487, 489 (5th Cir. 1981).

Amaran fails to show that the state court's permitting the officer to testify by offering his opinion on the cause of the accident and the cause of the death was both an abuse of discretion and contrary to, or an unreasonable application of, controlling federal law as required under Section 2254(d).

## INEFFECTIVE ASSISTANCE OF COUNSEL

Amaran claims ineffective assistance of counsel, a difficult claim to sustain. "[T]he cases in which habeas petitioners can properly prevail on the ground of ineffective assistance of counsel are few and far between." *Waters v. Thomas*, 46 F.3d 1506, 1511 (11th Cir. 1995) (*en banc*) (*quoting Rogers v. Zant*, 13 F.3d 384, 386 (11th Cir. 1994)). *Sims v. Singletary*, 155 F.3d 1297, 1305 (11th Cir. 1998), explains that *Strickland v. Washington*, 466 U.S. 668 (1984), governs an ineffective assistance of counsel claim:

> The law regarding ineffective assistance of counsel claims is well settled and well documented. In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set forth a two-part test for analyzing ineffective assistance of counsel claims. According to *Strickland*, first, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. *Strickland*, 466 U.S. at 687, 104 S. Ct. 2052.

*Strickland* requires proof of both deficient performance and consequent prejudice. *Strickland*, 466 U.S. at 697 ("There is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one."); *Sims*, 155 F.3d at 1305 ("When applying *Strickland*, we are free to dispose of ineffectiveness claims on either of its two grounds."). "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." 466 U.S. at 690. *Strickland* requires that "in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." 466 U.S. at 690.

Amaran must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." 466 U.S. at 691–92. To meet this burden, Amaran must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

Strickland cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." 466 U.S. at 690–91. Amaran cannot meet his burden merely by showing that the avenue chosen by counsel proved unsuccessful.

> The test has nothing to do with what the best lawyers would have done. Nor is the test even what most good lawyers would have done. We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial . . . . We are not interested in grading lawyers' performances; we are interested in whether the adversarial process at trial, in fact, worked adequately.

*White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992). *Accord Chandler v. United States*, 218 F.3d 1305, 1313 (11th Cir. 2000) ("To state the obvious: the trial lawyers, in every case, could have done something more or something different. So, omissions are inevitable . . . . [T]he issue is not what is possible or 'what is prudent or appropriate, but only what is constitutionally compelled.'") (*en banc*) (*quoting Burger v. Kemp*, 483 U.S. 776, 794 (1987)). The required extent of counsel's investigation was addressed recently in *Hittson v. GDCP Warden*, 759 F.3d 1210, 1267 (11th Cir. 2014), *cert. denied sub nom., Hittson v. Chatman*, 135 S. Ct. 2126 (2015):

> [W]e have explained that "no absolute duty exists to investigate particular facts or a certain line of defense." *Chandler*, 218 F.3d at 1317. "[C]ounsel has a duty to make *reasonable* investigations or make a *reasonable* decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691, 104 S. Ct. at 2066 (emphasis added). "[C]ounsel need not always investigate before pursuing

> or not pursuing a line of defense. Investigation (even a nonexhaustive, preliminary investigation) is not required for counsel reasonably to decline to investigate a line of defense thoroughly." *Chandler*, 218 F.3d at 1318. "In assessing the reasonableness of an attorney's investigation . . . a court must consider not only the quantum of evidence already known to counsel, but also whether the known evidence would lead a reasonable attorney to investigate further." *Wiggins*, 539 U.S. at 527, 123 S. Ct. at 2538.

*See also Jones v. Barnes*, 463 U.S. 745, 751 (1983) (confirming that counsel has no duty to raise a frivolous claim).

Under 28 U.S.C. § 2254(d) Amaran must prove that the state court's decision was "(1) . . . contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Sustaining a claim of ineffective assistance of counsel is very difficult because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so." *Richter*, 131 S. Ct. at 788. *See also Pinholster*, 131 S. Ct. at 1410 (An applicant must overcome this "'doubly deferential' standard of *Strickland* and the AEDPA."), *Johnson v. Sec'y, Dep't of Corr.*, 643 F.3d 907, 911 (11th Cir. 2011) ("Double deference is doubly difficult for a petitioner to overcome, and it will be a rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding."), and *Pooler v. Sec'y, Dep't of Corr.*, 702 F.3d 1252, 1270 (11th Cir. 2012) ("Because we must view Pooler's ineffective counsel claim — which is governed by the deferential

*Strickland* test — through the lens of AEDPA deference, the resulting standard of review is "doubly deferential."), *cert. denied*, 134 S. Ct. 191 (2013).

In denying Amaran's motion for post-conviction relief, the state court recognized that *Strickland* governs a claim of ineffective assistance of counsel. (Respondent's Exhibit 10 at 2) Because the state court rejected the claims based on *Strickland*, Amaran cannot meet the "contrary to" test in Section 2254(d)(1). Amaran instead must show that the state court unreasonably applied *Strickland* or unreasonably determined the facts. In determining "reasonableness," a federal application for the writ of habeas corpus authorizes determining only "whether the state habeas court was objectively reasonable in its *Strickland* inquiry," not an independent assessment of whether counsel's actions were reasonable. *Putnam v. Head*, 268 F.3d 1223, 1244, n.17 (11th Cir. 2001), *cert. denied*, 537 U.S. 870 (2002). The presumption of correctness and the highly deferential standard of review requires that the analysis of each claim begin with the state court's analysis. (Order Denying Motion for Post-Conviction Relief, Respondent's Exhibits 10 and 12)

**Ground Two**:

Amaran alleges that trial counsel rendered ineffective assistance by failing to investigate "Charlie," the motorcyclist Amaran contends cut in front of him and caused him to hit the guardrail. The state court afforded Amaran an evidentiary hearing on this claim, and later the post-conviction court denied relief with the

following analysis (Respondent's Exhibit 12 at 2–5) (italics and most alterations original) (citations to transcript omitted):

> [D]efendant alleges ineffective assistance of counsel for failure to question witnesses about the whereabouts of a potential defense witness, and for failure to investigate and call that defense witness. Specifically, Defendant contends that, after State' witnesses Joe Zendjas-Rodriguez and Gabriel Cassanova testified about another motorcyclist, Charlie, counsel should have asked these witnesses how counsel could locate Charlie to question him about Defendant's case. Defendant contends that, if these witnesses were able to provide counsel with Charlie's contact information, counsel could have moved to continue Defendant's case to attempt to contact Charlie to determine whether he may have information to assist in Defendant's defense. Had counsel investigated Charlie, Defendant contends, counsel could then have called Charlie —who Defendant alleges could have been available — to testify at trial, at which "Charlie . . . could have testified he cut in front of [Defendant] with his motorcycle at Malfunction Junction which cause[d] [Defendant] to crash into the guardrail." Such testimony could have corroborated Defendant's testimony that Defendant "slammed on his brakes only because a motorcycle cut him off, [causing another driver] to hit the Audi rear-end bumper and ultimately [causing the victim's] death. This testimony, Defendant contends, would have corroborated Defendant's testimony and shown that Defendant was not the sole cause contributing to the victim's death in this case. But for counsel's deficiencies, Defendant contends, there is a reasonable probability the outcome of Defendant's trial would have been different.

> In its August 4, 2011, Order Granting Evidentiary Hearing, the Court cited at length portions of the trial transcript reflecting that the testimony at trial was that "Charlie" was well ahead of the vehicles at the time of the accident and had not cut in front of Defendant in contribution to the accident, and cited an excerpt from trial indicating that "Charlie" had been unavailable to testify. However, because the record did not reflect what if any attempts counsel made to locate and investigate this witness, which was the basis for Defendant's allegation in ground one (a), and because Defendant's defense largely referenced the idea that "Charlie" had cut off Defendant and contributed to the accident, the Court granted Defendant an evidentiary hearing on his allegation that counsel was

deficient for not having obtained Charlie's contact information or location from witnesses Zendjas-Rodriguez and Cassanova in an effort to interview and ultimately call Charlie as a witness. Also in that Order, the Court noted the speculative nature of Defendant's claim, "as the allegation of deficiency rests on counsel's failure to ask these witnesses about Charlie's whereabouts which *possibly could have* led to counsel finding and investigating Charlie which *possibly could have* led to Charlie providing information that he contributed to this accident which *possibly could have* led to Charlie being available to testify on Defendant's behalf which *possibly could have* affected the outcome of Defendant's trial." (See August 4, 2011, Order Granting Evidentiary Hearing). The Court noted further that, "[a]t the evidentiary hearing, Defendant will bear the burden of demonstrating what information would have been ascertained from Charlie and what he would have testified to at trial if called as a witness that would have affected the outcome of Defendant's trial." (See August 4, 2011, Order Granting Evidentiary Hearing).

At the evidentiary hearing, Defendant's prior defense counsel testified that Defendant had told him of his belief that someone else, "Charlie," had caused the crash in this case, and that counsel had conducted depositions — including depositions of Zendjas and Cassanova — and investigation into this case to support such. Counsel testified, however, that no one could provide any specifics about "Charlie," including even his last name, and that, as a result, counsel could not locate this individual. Counsel testified further that, throughout the depositions, no one indicated that "Charlie" had been in any way involved in or contributed to this crash, as Defendant alleges. The Court finds this testimony to be credible, and finds that Counsel cannot be deemed deficient for failing to have located this witness under these circumstances. The Court notes also that Defendant failed to establish at the evidentiary hearing what more counsel could have done to locate this witness, or what this witness would have testified to if located, and that Defendant failed to present sufficient competent substantial evidence at the hearing to support his claim of ineffective assistance of counsel as alleged. *See Williams v. State*, 974 So. 2d 405 (Fla. 2d DCA 2007); *see e.g. Green v. State*, 857 So. 2d 304 (Fla. 2d DCA 2003). As Defendant has not demonstrated that counsel was deficient or that there was a reasonable probability that the outcome of Defendant's trial would have been different but for counsel's alleged deficiency, Defendant warrants no relief on this allegation.

The state court's credibility determination (that counsel's testimony was credible over that of Amaran) and the factual determination (that counsel attempted to ascertain the identity of "Charlie" but could not locate him and that Amaran failed to show "what more counsel could have done to locate the witness") bind this court. *Baldwin v. Johnson*, 152 F.3d 1304, 1316 (11th Cir. 1998) ("We must accept the state court's credibility determination and thus credit [counsel's] testimony over [petitioner's]."), *cert. denied*, 526 U.S. 1047 (1999) and *Devier v. Zant*, 3 F.3d 1445, 1456 (11th Cir. 1993) ("Findings by the state court concerning historical facts and assessments of witness credibility are, however, entitled to the same presumption accorded findings of fact under 28 U.S.C. § 2254(d)."), *cert. denied*, 513 U.S. 1161 (1995). *See also* 28 U.S.C. § 2254(e)(1) ("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). Moreover, Amaran fails to offer proof of "Charlie's" testimony, other than his speculation that the testimony would prove favorable.

As a consequence, the post-conviction court reasonably applied *Strickland* in determining that Amaran failed to prove both deficient performance and prejudice. Amaran is entitled to no relief under ground two.

**Ground Three**:

Amaran alleges that trial counsel rendered ineffective assistance by failing to impeach a state witness who testified that he saw Amaran's car swerving before the

accident. The state court afforded Amaran an evidentiary hearing on this claim, after

which the post-conviction court denied relief with the following analysis

(Respondent's Exhibit 12 at 7–8) (citations to transcript omitted):

> [D]efendant alleges ineffective assistance of counsel for failure
> to impeach the State's key witness. Specifically, Defendant
> contends that Joe Zendjas-Roriguez testified at trial that he
> witnessed Defendant swerving back and forth prior to the
> accident. Defendant contends further that, based on this
> testimony, counsel should have impeached Zendjas-Rodriguez
> by bringing out that he did not tell Florida Highway Patrol in
> his audio-taped statement nor did he state in his deposition
> testimony that he saw Defendant swerving back and forth. Had
> counsel impeached Zendjas-Rodriguez, Defendant contends,
> the jury would have doubted his credibility and there is a
> reasonable probability that the outcome of Defendant's trial
> would have been different.
>
> At the evidentiary hearing, Defendant's prior defense counsel
> testified that the other witnesses in the police reports as well as
> in their depositions and at trial all stated that Defendant had
> been weaving, suggesting that impeachment of this one witness
> on this one issue would likely not have affected the outcome of
> Defendant's trial. The Court finds counsel's testimony to be
> credible, and, after review of the trial transcript, finds there not
> to be a reasonable probability that the outcome of Defendant's
> trial would have been different but for counsel's failure to
> impeach this witness on this issue as Defendant alleges. As
> such, the Court finds that Defendant cannot demonstrate
> prejudice as a result of counsel's alleged deficiency, and thus
> warrants no relief on this allegation.

The post-conviction court found both that trial counsel's testimony was

credible and that Amaran suffered no harm for the lack of impeachment because

other witnesses had testified that they observed Amaran's car swerving. This

determination of lack of prejudice precludes proof of ineffective assistance of counsel.

As a consequence, the post-conviction court reasonably applied *Strickland*. Amaran is

entitled to no relief under ground three.

**Ground Four**:

Amaran alleges that trial counsel rendered ineffective assistance by failing to

move for a judgment of acquittal on the charge of leaving the scene of the accident.

The state court summarily denied this claim with the following analysis

(Respondent's Exhibit 10 at 16–17) (citations to transcript omitted):

> Defendant alleges ineffective assistance of counsel for failure
> to move for a judgment of acquittal as to his alleged "leaving
> the scene of an accident." Specifically, Defendant contends that
> the State did not present to the jury any evidence inconsistent
> with Defendant's theory that he fled from the crash scene only
> to avoid the victim's angry friends who were threatening and
> assaulting Defendant. Had counsel argued this lack of evidence
> in an adequate motion for judgment of acquittal on this
> element, Defendant contends, there is a reasonable probability
> the outcome of Defendant's trial would have been different.
> After review of the record, the Court finds that a judgment of
> acquittal on this basis would not have been successful, as there
> was evidence presented from the State that Defendant was
> leaving the scene, sufficient to allow this issue to proceed to the
> jury. As such, the Court finds that counsel cannot be deemed
> deficient as alleged, nor does the Court find there to be a
> reasonable probability that the outcome of Defendant's trial
> would have been different but for counsel's alleged deficiency.
> For these reasons, Defendant warrants no relief on this
> allegation . . . .

The state post-conviction court determined that counsel's performance was not

deficient because the state presented evidence of Amaran's attempt to flee, a finding

that is supported by the record because two motorcyclists testified that Amaran tried

to run away. (Respondent's Exhibit 2 at 204–05 and 228–30)  As a consequence, the

post-conviction court correctly determined that a motion for judgment of acquittal on

the charge of leaving the scene of an accident would not have prevailed.  The state

court reasonably applied *Strickland* in determining that trial counsel's performance

was not deficient and the alleged omission by counsel had no affect on the outcome of the trial.

**CONCLUSION**

Amaran fails to meet his burden to show that the state court's decision was either an unreasonable application of controlling Supreme Court precedent or an unreasonable determination of fact. As *Burt v. Titlow*, 134 S. Ct. 10, 15–16 (2013), recognizes, an applicant's burden under Section 2254 is very difficult to meet:

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Harrington v. Richter*, 562 U.S. [86, 103] (2011). "If this standard is difficult to meet" — and it is — "that is because it was meant to be." *Id.*, at [102]. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. *Id.*, at [103] (internal quotation marks omitted).

Accordingly, Amaran's application for the writ of habeas corpus (Doc. 1) is **DENIED**. The clerk must enter a judgment against Amaran and close this case.

**DENIAL OF BOTH**
**A CERTIFICATE OF APPEALABILITY**
**AND LEAVE TO APPEAL *IN FORMA PAUPERIS***

Amaran is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his application. 28 U.S.C. § 2253(c)(1). Rather, a district court must first

issue a COA.  Section 2253(c)(2) permits issuing a COA "only if the applicant has made a substantial showing of the denial of a constitutional right."  To merit a COA, Amaran must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues he seeks to raise.  *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir 2001).  Because he fails to show that reasonable jurists would debate either the merits of the claims or the procedural issues, Amaran is entitled to neither a COA nor leave to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**.  Leave to appeal *in forma pauperis* is **DENIED**.  Amaran must obtain permission from the circuit court to appeal *in forma pauperis*.

ORDERED in Tampa, Florida, on September 11, 2018.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE